VAN DORN IRON WORKS COMPANY, APPELLEE, V. STATE OF NEBRASKA, APPELLANT.

FILED MAY 17, 1906.  No. 14,609.

Contracts: VALIDITY.  An appropriation by the legislature of $80,000 for "240 steel cells and sewerage" for the penitentiary does not necessarily require that sewerage must be put in all cells contracted for, but leaves a discretion in the board of public lands and buildings so that a contract to construct the 240 cells will not be held void because it provides that six of such cells may be without sewerage.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE.  *Affirmed.*

*Norris Brown, Attorney General,* and *W. T. Thompson,* for appellant.

*O. B. Polk, contra.*

ALBERT, C.

The petition filed by the plaintiff below (the appellee) is based on the following state of facts:  By an act making appropriations for the current expenses of the state for the years ending March 31, 1904, and March 31, 1905, approved April 11, 1903, there were included certain items for the penitentiary, among which are the following: "For 240 steel cells and sewerage $80,000." Laws 1903, ch. 160, p. 718. In pursuance of this appropriation, the board of public lands and buildings decided to construct 156 cells in the state penitentiary, and, after due notice to bidders, awarded the contract for the construction of such cells

to the plaintiff. The cells were constructed and accepted by the board of public lands and buildings, but the auditor rejected the claim for final payment under the contracts on the ground that the appropriation called for 240 cells, while the contract had been awarded for but 156. Thereupon the board decided to construct the remaining 84 cells, and, after due notice to bidders, awarded the contract therefor to the plaintiff, who undertook to construct the 84 cells for $9,982. It appears from the argument that his bid was placed at that figure because that was all that remained of the appropriation, and he felt compelled to make some sacrifice in order to obtain payment of the balance due on his original contract. The 156 cells were placed in two tiers of 78 cells each. Of the 84 cells contemplated by the contract, 78 were to constitute a third tier. The remaining six were not really required and no precise location was provided for them. They were designated as "female and juvenile cells."

The second contract contains the following provision: "Each of the cells in the third story to have one standard improved cast iron enameled flush rim prison closet placed underneath the nitch in utility corridor and connected with heavy cast iron enamel trap. The trap is to be connected with a section of 4 inch soil pipe stack extending from the floor to the ceiling of the cell, all connections to be made with sanitary tees, all traps to be vented from the crown with 2 inch vents." The foregoing provision, it will be observed, relates to the third story, that is, the third tier of cells, and does not include the six "female and juvenile cells." With respect to the latter, the contract contains this provision: "The six additional cells for juveniles or females will be of the same size as the other cells and constructed in the same manner, except with the entire fronts to be grating, the doors to be swung on 6 inch steel hinges and locked with four tumbler spring lock attached to swing bar, which will cover the entire front door and lock with spring lock." The contract also contains this provision: "The contractor will give his

personal superintendence to the work or have a representative to receive instructions, shall furnish all materials and labor, including heating, transportation, scaffolding, apparatus and utensils necessary to complete the work according to the true intent and meaning of the drawings and specifications, of which intent and meaning the architect shall be the sole interpreter, and his ruling shall be final and binding upon the parties to the contract."

The plaintiff constructed the 84 cells, which were approved by the state architect, as shown by the following communication addressed by him to the board of public lands and buildings: "Lincoln, Neb., Dec. 17, 1904. To the Hon. Board of Public Lands and Buildings, Gentlemen: I have examined the third tier of steel cells also the six juvenile cells at the state penitentiary and find the material and labor in accordance to the plans and specifications. Under head of 'Note Particulars' (see specifications) the plumbing is noted to apply to the third tier only. Yours respectfully, Jas. Tyler, Jr., State Architect."

In addition to the foregoing facts, the petition also contains the following allegations: "(7) That the plaintiff herein constructed said cells (the 84 cells) in conformity with the specifications of said state architect in all things. That plaintiff did not place any plumbing in the six juvenile or female cells contained in said specifications nor did plaintiff connect said cells with the sewerage system, but it was not contemplated by the parties to said contract that plumbing should be placed in such cells. (8) That after the completion of said contract as herein alleged, to wit, on the 17th day of December, 1904, the said state architect, James Tyler, Jr., who by said contract was made the sole judge of said work, duly approved the same, a copy of said approval is hereto attached marked exhibit 'D' and made a part hereof. (9) That the state of Nebraska, on said last named contract, has paid the sum of $6,654, leaving a balance due on said contract of $3,328. (10) That on or about the —— day of February, 1905, the plaintiff herein filed with the secretary of state its claim

in triplicate vouchers as required by said secretary of state, and the same was submitted to the auditor of public accounts for the allowance thereof and for a warrant of said sum of $3,328. (11) That upon the 4th day of September, 1905, the board of public lands and buildings approved said voucher, and ordered the auditor of public accounts to draw his warrant for said sum of $3,328 in payment of said claim. (12) That on the 26th day of September, 1905, the said auditor of public accounts refused to draw a warrant for said claim, and indorsed his reasons for said refusal upon said voucher as follows: 'Warrant not drawn for reason it appears that work was not completed within the terms of the appropriation.' "

A general demurrer to the petition was interposed and overruled. The state elected to stand on its demurrer, and judgment went accordingly. The state appeals.

The contention of the state is thus epitomized in its brief filed in this court: "The auditor of public accounts cannot be compelled to issue to a contractor a warrant to pay a claim for a public improvement constructed in a manner at variance with the statute making the appropriation against which claimant's voucher is drawn. * * * The appropriation was made for steel cells and sewerage. These two matters were not left to the discretion of the officers. If the board had authority or discretion in other matters, this power did not extend to the sewerage settled by the legislative enactment." This contention is based on the fact that the six "female or juvenile" cells were not connected with the sewerage system, which fact affirmatively appears from the seventh paragraph of the petition included in the quotation therefrom, *supra*. Running through the entire argument is the assumption that the legislative language, "For 240 steel cells and sewerage," should be interpreted as though it read "For 240 steel cells, and sewerage for each of such cells." We know of no good reason for placing that interpretation on the language of the appropriation. On the contrary we think it is fair to presume that the legislature intended to allow

the board of public lands and buildings a reasonable discretion in the expenditure of the fund, and not to bind it down by unnecessary and vexatious details. The general terms in which the appropriation was made justifies this presumption, and the facts disclosed by the record show the wisdom of avoiding unnecessary details. The six cells were not actually needed, and may not be needed for some time. No location was provided for them. To hold that the board of public lands and buildings was bound to provide sewerage that was not required in order to get cells and sewerage that were required would impute a lack of foresight and sound judgment to the legislature, which is by no means warranted by the language employed in making the appropriation. So far as the contract itself is concerned, we have set out that portion which relates to sewerage and the six cells in question. Standing alone it might admit of some doubt whether it contemplates that the six cells shall be connected with a system of sewerage. But the agents of the state who executed the contract on its behalf, and the state architect who, by the terms of the contract, is made the final arbiter as to the interpretation to be placed on the plans and specifications, held that sewerage for such cells was not contemplated by the contract. Since the contract admits of that construction, we feel bound by it in view of all the circumstances.

It is recommended that the judgment of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.